HARMON v. OKLAHOMA TAX COMMISSION.

No. 30016.    Oct. 14, 1941.

*118 P. 2d 205.*

Harry A. Campbell, Roger S. Randolph, and Hilary D. Mahin, all of Tulsa, for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, all of Oklahoma City, for defendant in error.

WELCH, C. J.    This is an appeal by C. C. Harmon, hereinafter referred to as appellant, from an order of the Oklahoma Tax Commisson assessing additional income tax against his income for the months of November and December, 1939. The sole question involved herein is whether or not the income involved was derived from community property of appellant and his

wife or from the separate property of appellant, and involves a construction of the Community Property Act, article 2, ch. 62, Session Laws 1939. We have not heretofore been called upon to construe any portion of this act.

The items of income herein involved are listed by the Tax Commission as follows:

(1) "Cash from sales of oil and gas from Oklahoma oil and gas royalties after deducting gross production taxes and 20% depletion. These royalty interests were acquired by C. C. Harmon in his name with his separate funds before November 1, 1939. The deeds under which he acquired title include general warranty deeds, mineral deeds, and conveyances of oil and gas rights."

(2) "Cash from sales of oil and gas from Oklahoma oil and gas leases after deducting operation expense, depreciation and depletion. These leases were acquired by C. C. Harmon in his name with his separate funds before November 1, 1939."

(3) "Profit from sale of nonproducing oil and gas lease to Carter Oil Company, less cost of lease. This lease was acquired by C. C. Harmon in his name with his separate funds before November 1, 1939."

Section 1 of art. 2, ch. 62, supra, provides that the act shall apply only to husbands and wives and to their property after the filing of a written election to come under the terms of the act.

Section 2 provides that the written election shall be executed in duplicate signed and acknowledged by both husband and wife, and copies thereof filed in the office of the county clerk of the county of the residence of the signers thereof, and in the office of the Secretary of State.

Section 3 of the act provides:

"All property, both real and personal, of the husband owned or claimed by him before the effective date of the election to come under the terms of the act, as provided in section 1 of this act, and that acquired afterwards by gift, including gifts of the wife's interest in community property, by division of community property, by devise, or by descent, as also the *increase of all lands thus owned or acquired,* shall be his separate property. The separate property of the husband shall not be subject to the debts contracted by the wife of liable for her torts, either before or after the effective date of said election, except as may be permitted by law as to his property prior to the enactment of this act. The husband shall have the sole management, control and disposition of his separate property, both real and personal, to the extent permitted by law as to his property prior to the enactment of this act."

Section 4 of the act provides:

"All property, both real and personal, of the wife owned or claimed by her before the effective date of the election to come under the terms of the act as provided in section 1 of this act, and that acquired afterwards by gift, including gifts of the husband's interest in community property, by division of community property, by devise, or by descent, as also the increase of all lands thus owned or acquired, shall be her separate property. The separate property of the wife shall not be subject to the debts contracted by the husband or liable for his torts, either before or after the effective date of said election, except as may be permitted by law as to her property prior to the enactment of this act. The wife shall have the sole management, control and disposition of her separate property, both real and personal, to the extent permitted by law as to her property prior to the enactment of this act."

Section 6 of the act provides, in part, as follows:

"All property acquired by the husband or the wife after the effective date of the election to come under the terms of the act as provided in section 1 of this act, except that which is separate property of either one or the other, shall be deemed the community or common property of the husband and the wife and each, subject to the provisions of this act, shall be vested with an undivided one-half interest therein. . . ."

The written election herein was filed in the office of the county clerk of Nowata county and in the office of the

Secretary of State on October 26, 1939. There is involved only the income accruing to the parties for the months of November and December. It is the appellant's contention that only one-half of the income derived from the sources hereinabove stated is taxable as against him for the reason that the property was community property. But the commission held that the income was appellant's separate property, therefore all of such income derived from said sources was taxable as against him.

In support of its finding the commission argues that while an oil and gas lease does not convey any right, title, or interest in or to the oil in place, nevertheless the lessee is vested with a valuable property right, and that the income results from the enhanced value of the lease and that such enhancement in value does not change the property from separate property to community property.

As heretofore stated, the act in question has never been construed by this court, but the question presented here requires a determination of the nature of the property rights from which the income was derived. On this point there is no dearth of authority.

The case of Anderson v. Helvering, 310 U. S. 404, 84 L. Ed. 1277, 60 S. Ct. 952, involved a question of taxability of income derived by a producer of an oil lease. Therein the court said:

"Oil and gas reserves, like other minerals in place, are recognized as wasting assets. The production of oil and gas, like the mining of ore, is treated as an income-producing operation, not as a conversion of capital investment as upon a sale, and is said to resemble a manufacturing business carried on by the use of the soil. Burnet v. Harmel, 287 U. S. 103, 106, 107, 77 L. Ed. 199, 202, 203, 53 S. Ct. 74; Bankers Pocahontas Coal Co. v. Burnet, 287 U. S. 308, 77 L. Ed. 325, 53 S. Ct. 150; United States v. Biwabik Min. Co., 247 U. S. 116, 62 L. Ed. 1017, 38 S. Ct. 462; Von Baumbach v. Sargent Land Co., 242 U. S. 503, 521, 522, 61 L. Ed. 460, 470, 37 S. Ct. 201; Stratton's Independence v. Howbert, 231 U. S. 399, 414, 58 L. Ed. 285, 291, 34 S. Ct. 136. The depletion effected by production is likened to the depreciation of machinery or the using up of raw materials in manufacturing. United States v. Ludey, 274 U. S. 295, 302, 303, 71 L. Ed. 1054, 1058, 1059, 47 S. Ct. 608; Lynch v. Alworth-Stephens Co., 267 U. S. 364, 370, 69 L. Ed. 660, 662, 45 S. Ct. 274. Compare Von Baumbach v. Sargent Land Co., supra (242 U. S. at 524, 525, 61 L. Ed. 471, 472, 37 S. Ct. 201. . . .

" 'The words "gross income from the property," as used in the statute governing the allowance for depletion, mean gross income received from the operation of the oil and gas wells by one who has a capital investment therein, —not income from the sale of the oil and gas properties themselves.' Helvering v. Elbe Oil Land Development Co., 303 U. S. 372, 375, 82 L. Ed. 904, 906, 907, 58 S. Ct. 621."

It is argued by the commission that since the act in question was patterned after the Texas law, the authorities of that state construing the Community Property Law of Texas should be followed. We are referred to the cases of State v. Hatcher, 115 Tex. 332, 281 S. W. 192, and Stephens v. Stephens (Tex. Civ. App.) 292 S. W. 290. An examination of these authorities dscloses that the opinions are predicated upon the proposition that oil in place is a part of the land and the execution of an oil and gas lease is in effect a sale of a portion of the land. See, also, Chesson v. Commissioner of Internal Revenue (C.C. A. 5th) 57 F. 2d 141; Commissioner of Internal Revenue v. Wilson (C.C.A. 5th) 76 F. 2d 766.

The difference between the rule in Texas and the rule prevailing in this jurisdiction with reference to property rights in oil and gas is very clearly shown in the case of Alexander v. King (C.C.A. 10th) 46 F. 2d 235, 74 A.L.R. 174, which action arose in this state. In that case the applicable state and federal authorities were carefully reviewed. Rich v. Doneghey, 71 Okla. 204, 177 P. 86, 89, 3 A.L.R. 352, is referred to as the leading case in this jurisdiction. It was pointed out that the Okla-

homa decisions following the above-cited case are in complete harmony with the decision of the United States Supreme Court in Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 583, 44 L. Ed. 729. The exact question presented was whether income derived from royalty interests under oil and gas leases was taxable as ordinary income or as capital gain arising from the sale of capital assets. Upon the authority of the state and federal cases it was held:

"The proceeds of oil received by the lessor as royalty under an oil lease are taxable as ordinary income, and not as capital gains arising from the sales of capital assets held by the taxpayer for more than two years, even though the land covered by the lease has been owned for more than two years, there being no ownership in oil until it is reduced to possession."

An examination of the authorities cited in the annotation, 74 A.L.R. 183, discloses that the rule so announced is supported by the overwhelming weight of authority. The opinion likewise approved the holding of this court in the case of Carter v. Rector, 88 Okla. 12, 210 P. 1035, where it was held that a $300,000 bonus paid for a lease on producing oil property was ordinary income and not a conversion of capital or "the proceeds of a sale of an interest in the land." See, also, Carter v. McCauley, 97 Okla. 255, 225 P. 527, and Adams v. Tidal Oil Co., 113 Okla. 15, 237 P. 443. In 125 A.L.R. 733, appears the following annotation:

"The execution of a mineral lease on a royalty basis has been held not to constitute a 'sale or exchange' within the meaning of income tax statutes relating to capital gains and losses, and both the royalties received by the lessor under the lease and the bonus received on its execution have been held taxable as ordinary income rather than as capital gain. (Citing cases.)

"Although an oil and gas lease was regarded as a sale of the oil and gas in place under the local law (Texas) in Burnet v. Harmel (1932) 287 U. S. 103, 77 L. Ed. 199, 53 S. Ct. 74 (reversing (1932; C.C.A. 5th) 56 F. 2d 153, which reversed (1930) 19 B.T.A. 376), the bonus received by a landowner on the execution of a lease on a royalty basis was held, for federal income tax purposes, not to be gain from the 'sale or exchange' of capital assets. Earlier decisions to the contrary, which were over-ruled by Burnet v. Harmel (U. S.) supra, include Ferguson v. Commissioner of Internal Revenue (1930; C.C.A. 5th) 45 F. 2d 573 (reversing in part (1930) 20 B.T.A. 130); W. T. Waggoner v. Commissioner of Internal Revenue (1931) 24 B.T.A. (F) 657; and Tippett v. Commissioner of Internal Revenue (1932) 25 B.T.A. (F) 69."

It is well settled that in this jurisdiction oil and gas is not treated as a portion of the corpus of the real property; that no title vests therein until it is reduced to possession; that the sale of oil and gas is not a sale of a portion of the capital assets nor of an interest in the land. The income derived from the sale of oil and gas after discovery and production does not constitute an enhancement of the value of the corpus of the separate real property of the appellant, but is property acquired "after the effective date of the election to come under the terms of the act," and therefore is "deemed the community or common property of the husband and wife." Section 6, supra. Said property should be so treated in estimating the amount of income taxes due the state by appellant and his wife.

With reference to the profit derived from the sale of an oil and gas lease, a wholly different question is presented. It appears that appellant owned a certain lease prior to November 1, 1939, and after said date sold the same to the Carter Oil Company, realizing a profit of $175. Under the provisions of section 3 of the act, all property of the husband owned by him before the effective date of election to come under the terms of the act continues to be his separate property.

In the case of In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997, 1000, we said:

". . . Generally, an oil and gas lease, a school land lease, or a lease of any

sort, for that matter, undoubtedly is property. . . ."

See, also, Shaffer v. Marks, 241 F. 139, affirmed, 256 F. 648, 168 C.C.A. 42.

We do not find it necessary to again define the nature of the property rights of an oil and gas lessee. Our former decisions on this point should be sufficient. Suffice it to say that there is nothing in any of them which conflicts with the view that the lease is "property."

It therefore appears that insofar as the sale of oil and gas lease is concerned, we have a "simple sale of separate property" as in the case of O'Conner v. Commissioner of Internal Revenue, C.C.A. 5th, 110 F. 2d 652. Accordingly, we must conclude that profits derived from the sale constitute the separate income of the appellant and should be so considered in computing the amount of income taxes due the state.

We are confronted with the additional question whether the Oklahoma Community Property Law is violative of section 57, art. 5, or sections 2, 7, 15, or 23 of art. 2, or section 46 of art. 5, of our Constitution. Heretofore, in this discussion, we have rather assumed the act was constitutional, but appellant has filed a supplemental brief expressly presenting the constitutional aspect of this legislation for our consideration, and the discharge of our full duty requires that we discuss the point at least briefly.

The title to this act is quite comprehensive, relating to the one general subject, and expresses in some detail the various provisions to be found in the body of the act, as to description, acquisition, creation, and management of community property. It is at once clear that the act here is not successfully attacked as being violative of article 5, sec. 57, of our Constitution.

We reach the same conclusion in testing constitutionality of the act by application of article 2, secs. 2, 7, 15, and 23, and article 5, sec. 46, of our Constitution. Those sections in the order named provide (in part where indicated) as follows:

"All persons have the inherent right to . . . the enjoyment of the gains of their own industry."

"No person shall be deprived of . . . property without due process of law."

"No bill . . . nor any law impairing the obligation of contracts shall even be passed."

"No private property shall be taken or damaged for private use, . . . unless by consent of the owner. . . ."

"The Legislature shall not . . . pass any local or special law authorizing; The creation, extension, or impairing of liens; . . . changing the law of descent or succession. . . ."

The first-quoted section is violated by acts which wrongfully invade the rights there referred to, as in Grantham v. City of Chickasha, 156 Okla. 56, 9 P. 2d 747; but even acts which to some extent interfere with those rights in the individual may be sustainable in the interest of the general good or within the police power of the state, as in Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977. The act here considered does not in either manner invade the rights of the citizen, for no effect is had upon any such right except by his express election.

The second quoted section may be violated by an act which deprives one of property against his will, but not by an act which deprives him of property or affects his property rights only by his own consent. Mozley v. Coleman, 88 Okla. 118, 212 P. 431.

The fourth quoted section likewise may not be violated by an act which provides for specific consent, expressed in a specified manner, before the act affects private property. The letter of that section, however, must give way in case of certain exercises of the police power, as in Patterson v. Stanolind Oil & Gas Co., 182 Okla. 155, 77 P. 2d 83, 305 U. S. 376, 59 S. Ct. 259, 83 L. Ed. 231.

The third quoted section could hardly be violated by an act which expressly recognizes the continuance of pre-exist-

480

ing property and contractual rights and obligations, and has no effect until after the election therein provided for.

In reference to the fifth partially quoted section, a sound definition of a local or special law is found in Territory of Oklahoma v. School District, 10 Okla. 556, 64 P. 241. That provision of the Constitution is not violated by an act which has a state-wide application available to each married citizen of the state, and which in no way changes the law of descent or distribution.

The order of the Tax Commission is vacated and the cause remanded, with directions to proceed to compute the income tax of appellant in accordance with the views herein expressed.

BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and OSBORN and GIBSON, JJ., concur in result. RILEY, J., absent.