## COMMISSIONER OF INTERNAL REVENUE
## *v.* HARMON.

No. 33.   Argued October 18, 19, 1944.—Decided November 20, 1944.

*Assistant Attorney General Samuel O. Clark, Jr.,* with whom *Solicitor General Fahy, Messrs. Sewall Key, Paul A. Freund, Bernard Chertcoff,* and *Miss Helen R. Carloss* were on the brief, for petitioner.

*Messrs. L. Karlton Mosteller* and *Villard Martin* for respondent.

*Mr. George Neuner,* Attorney General of Oregon, and *Grace L. Bottler,* Assistant Attorney General, filed a brief on behalf of that State, as *amicus curiae,* urging affirmance.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The question posed by this case is whether, upon a state's adoption of an optional community property law, a husband and wife who elect to come under that law are entitled thereafter to divide the community income equally between them for purposes of federal income tax.

July 29, 1939, Oklahoma adopted a community property law operative only if and when husband and wife

elect to avail of its provisions. In conformity to the requirements of the statute, the respondent and his wife filed, October 26, 1939, a written election to have the law apply to them. From November 1 to December 31, 1939, they received income consisting of his salary, dividends from his stocks, dividends from her stocks, interest on obligations due him, distribution of profits of a partnership of which he was a member, and oil royalties due to each of them. The Act constitutes all of these receipts community income. The taxpayer and his wife filed separate income tax returns for 1939 in which each reported one half of the November and December income. The Commissioner determined a deficiency in the view that the respondent was taxable on all of the income derived from his earnings and from his separate property, but on none of that derived from his wife's separate property.

The Tax Court sustained the method adopted by the respondent and his wife.[1] The Circuit Court of Appeals, one judge dissenting, affirmed the decision.[2] Both courts relied on *Poe* v. *Seaborn*, 282 U. S. 101. They concluded that, after election to take the benefit of the law, the wife became vested with one half of all community income as therein defined. And, since this court held in *Poe* v. *Seaborn* that the community income there involved was, as to one half, the income "of" the wife within the intent of what is now § 11 of the Internal Revenue Code,[3] because she had an original and not a derivative vested property interest therein, it must follow that, under the Oklahoma law, one half of the income is the wife's for income tax purposes. They overruled the petitioner's contention that, as the statute permits voluntary action which effects a transfer of rights of the husband and wife, the case is

---

[1] 1 T. C. 40.

[2] 139 F. 2d 211.

[3] 26 U. S. C. § 11. The section provides that the tax shall be levied "upon the net income of every individual." The language has been the same in each of the Revenue Acts.

governed by *Lucas* v. *Earl*, 281 U. S. 111, and other decisions of like import.[4]   We hold that the petitioner's view is the right one.

Under *Lucas* v. *Earl* an assignment of income to be earned or to accrue in the future, even though authorized by state law and irrevocable in character, is ineffective to render the income immune from taxation as that of the assignor.   On the other hand, in those states which, by inheritance of Spanish law, have always had a legal community property system, which vests in each spouse one half of the community income as it accrues, each is entitled to return one half of the income as the basis of federal income tax.   Communities are of two sorts,—consensual and legal.   A consensual community arises out of contract.   It does not significantly differ in origin or nature from such a status as was in question in *Lucas* v. *Earl*, where by contract future income of the spouses was to vest in them as joint tenants.   In *Poe* v. *Seaborn, supra,* the court was not dealing with a consensual community but one made an incident of marriage by the inveterate policy of the State.   In that case the court was faced with these facts: The legal community system of the States in question long antedated the Sixteenth Amendment and the first Revenue Act adopted thereunder.   Under that system, as a result of State policy, and without any act on the part of either spouse, one half of the community income vested in each spouse as the income accrued and was, in law, to that extent, the income of the spouse.   The Treasury had consistently ruled that the Revenue Act applied to the property systems of those States as it found them and consequently husband and wife were entitled each to return one half the community income.   The Congress was fully conversant of these rulings and the practice thereunder, was asked to alter the provisions of

---

[4] See also *Burnet* v. *Leininger*, 285 U. S. 136; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122.

later revenue acts to change the incidence of the tax, and refused to do so. In these circumstances, the court declined to apply the doctrine of *Lucas* v. *Earl*.

In Oklahoma, prior to the passage of the community property law, the rules of the common law, as modified by statute, represented the settled policy of the State concerning the relation of husband and wife. A husband's income from earnings was his own; that from his securities was his own. The same was true of the wife's income. Prior to 1939, Oklahoma had no policy with respect to the artificial being known as a community. Nor can we say that, since that year, the State has any new policy, for it has not adopted, as an incident of marriage, any legal community property system. The most that can be said is that the present policy of Oklahoma is to permit spouses, by contract, to alter the status which they would otherwise have under the prevailing property system in the State.

Such legislative permission cannot alter the true nature of what is done when husband and wife, after marriage, alter certain of the incidents of that relation by mutual contract. Married persons in many noncommunity states might, by agreement, make a similar alteration in their prospective rights to the fruits of each other's labors or investments, as was done in *Lucas* v. *Earl*. This would seem to be possible in every State where husband and wife are permitted freely to contract with each other respecting property thereafter acquired by either.

Much of counsel's argument is addressed to specific features of the Oklahoma community property law and comparison of those features with the laws of the traditional community property States. We lay this aside and assume that, once established, the community property status of Oklahoma spouses is at least equal to that of man and wife in any community property State with whose law we were concerned in *Poe* v. *Seaborn*. To cite

examples: We think it immaterial, for present purposes, that the community status may or may not be altered by contract between the parties, may or may not be avoided by antenuptial agreements, or that certain assets of a spouse may or may not be classed as "separate" property excluded from the community. The important fact is that the community system of Oklahoma is not a system, dictated by State policy, as an incident of matrimony.

Our decisions in *United States* v. *Robbins*, 269 U. S. 315, and in *United States* v. *Malcolm*, 282 U. S. 792, do not, as respondent argues, require an affirmance of the judgment. Those cases dealt with the community property law of California. The concept of community property came to California from the Spanish law, as it did in other States whose territory had once been a part of the Spanish possessions on this continent. There had been a series of decisions in California with respect to the character of the wife's rights in the community. The courts had at times indicated that this was a vested property right and on other occasions had indicated that all the wife had was a mere expectancy which ripened on the death of the husband. Prior to the decision in the *Robbins* case the Supreme Court of the State had finally ruled that her interest was of the latter sort. The Treasury had taken the same view and had denied California spouses the privilege of each returning one-half of the community income. In view of the decision of the Supreme Court of California this court sustained the Treasury's ruling in the *Robbins* case. This was in spite of the fact that over a period of years the legislature of California had adopted statutes which indicated that the wife's interest was in fact more than a mere expectancy. In 1927 the California legislature, in an effort to settle this controversy of long standing, adopted a statute declaring that the wife's interest in the community was a present vested interest. Then came the *Malcolm* case in which the Circuit Court of Appeals

for the Ninth Circuit certified to this court two questions: First, whether in view of the law of California the husband must return the entire income, and, second, whether the wife, under the Act of 1927, had such an interest in the community income that she should separately report and pay tax on one half thereof. In a *per curiam* opinion this court answered the first question "No" and the second question "Yes." Two circumstances must be borne in mind in connection with that decision. The incidents of the system had been the subject of litigation for years. The final action of the legislature could well be taken as declaratory of what it involved and implied as respects the interests of husbands and wives. Thus the court was not required to meet any such question as is presented here by the permissive initiation of community property status. In addition, inspection of the briefs and of the report will show that the court's action was bottomed on a concession by the Government that "with respect to the particular income here in question, the interests of the husband and wife were such as to bring the case within the rulings" in *Poe* v. *Seaborn* and related cases, "because of amendments of the California statutes made since *United States* v. *Robbins,* 269 U. S. 315, was decided." It is apparent, therefore, that our decisions dealing with California law do not answer the question presented in this case.

The judgment is

*Reversed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

The federal income tax law makes a discrimination in favor of the community property states. In 1937 the Secretary of the Treasury pointed out [1] that

---

[1] Tax Evasion and Avoidance, Hearings, House Committee On Ways and Means, 75th Cong., 1st Sess., p. 4.

"A New York resident with a salary of $100,000 pays about $32,525 Federal income tax; a Californian with the same salary may cause one-half to be reported by his wife and the Federal income taxes payable by the two will be only $18,626. The total loss of revenue due to this unjustifiable discrimination against the residents of 40 States runs into the millions."

That discrimination has become increasingly sharp as surtax rates have increased.[2] The source of that discrimination is to be found in decisions of this Court.

Those decisions[3] are best illustrated by *Poe v. Seaborn,* 282 U. S. 101, which involved the community property system of the State of Washington. They held that the husband need pay the federal income tax on only one-half of his salary and other income from the community, since the other half of those earnings from their very inception belonged to his wife. The collector had argued that the control exercised by the husband over the community was sufficient to make him liable for the tax on the full amount. That result had indeed been indicated by Mr. Justice Holmes speaking for the Court in *United States v. Robbins,* 269 U. S. 315, 327. And it has been strongly urged that our recent decisions—such as *Helvering v. Clifford,* 309 U. S. 331, and *Harrison v. Schaffner,* 312 U. S. 579—make for the same result.[4] But in *Poe v. Seaborn* and related cases the Court discarded that test. It was more concerned with legal doctrine than it was with economic realities. It held that the wife's interest in the com-

---

[2] See the table computed on the 1941 rates in 3 Mertens, Law of Federal Income Taxation (1942) p. 20.

[3] *Goodell v. Koch,* 282 U. S. 118, involving the community property system of Arizona; *Hopkins v. Bacon,* 282 U. S. 122 (Texas) ; *Bender v. Pfaff,* 282 U. S. 127 (Louisiana) ; *United States v. Malcolm,* 282 U. S. 792 (California).

[4] See for example Ray, Proposed Changes in Federal Taxation of Community Property, 30 Calif. L. Rev. 397, 407; 1 Paul, Federal Estate & Gift Taxation (1942) § 1.09.

munity (including the husband's salary) was "vested" [5] and that therefore the husband need pay the federal income tax on only half of that income.

One dubious decision does not of course justify another. But if Texas can reduce the husband's income tax by creating in his wife a "vested" interest in half his salary and other income, I fail to see why its neighbor, Oklahoma, may not do the same thing. The Court now concedes that once established, the community property status of Oklahoma spouses is at least equal to that of man and wife in any community property state. How then can Oklahoma be denied the same privilege which other community property states enjoy?

It is said that the elective feature of the Oklahoma statute causes it to run afoul of *Lucas* v. *Earl,* 281 U. S. 111, which held that an assignment of income to be earned or to accrue in the future was ineffective to render the income immune from taxation as that of the assignor. But the Court was not troubled with *Lucas* v. *Earl* in *Poe* v. *Seaborn.* It disposed of that argument by saying that in *Lucas* v. *Earl* the "very assignment" was bottomed on the fact that "the earnings would be the husband's property, else there would have been nothing on which it could operate. That case presents quite a different question from this, *because here, by law, the earnings are never the property of the husband, but that of the community."* 282 U. S. p. 117. (Italics added.) By the same reasoning we should say that Oklahoma has made these earnings the "property" of the community once the written election

---

[5] Cf. *Helvering* v. *Hallock,* 309 U. S. 106, 118:

"The importation of these distinctions and controversies from the law of property into the administration of the estate tax precludes a fair and workable tax system. Essentially the same interests, judged from the point of view of wealth, will be taxable or not, depending upon elusive and subtle casuistries which may have their historic justification but possess no relevance for tax purposes."

has been filed and that income which accrues thereafter never becomes the sole "property" of the husband. Indeed we have the word of the Supreme Court of Oklahoma that such a transfer was effected by the written election filed by the husband and wife in this case. *Harmon* v. *Oklahoma Tax Commission*, 189 Okla. 475, 118 P. 2d 205. There is no suggestion that the transfer of "property" interests in this case is any less genuine or effective than it was in *Poe* v. *Seaborn*. The written election once filed is irrevocable. Only death or a decree of absolute divorce can alter it. Okla. Stats. Ann. 1941, Title 32, § 51. If as *Poe* v. *Seaborn* holds the crucial circumstance is whether the income as it accrues is the "property" of the community, it should make no difference for federal income tax purposes that the transfer from the husband to the community was effected by the act of filing a written election rather than by the act of marriage. If, "by law, the earnings are never the property of the husband, but that of the community" (*Poe* v. *Seaborn, supra,* p. 117), the husband should fare no better in Washington or Texas or California than in Oklahoma. The source of the "law" which determines whether or not that result obtains is the same in each case—the legislature and the judiciary of the particular state. If they declare that the husband has lost and the wife acquired a "property" interest by a certain act (whether by marriage, or by the filing of a paper), it is the "law" though it is a recent pronouncement and not an "inveterate" and long standing rule of that particular state. The consequence under the federal income tax statute is of course for us to decide. My only point is that if that is the formula for some states it should be the formula for all. We should apply it equally and without discrimination or we should discard it completely.

But it is said that the filing of a written election under the Oklahoma statute is an "anticipatory arrangement"

for the disposition of income under the rule of *Lucas* v. *Earl;* that a "consensual" community will not be recognized for federal income tax purposes but that a "legal" community will. As the Tax Court, however, pointed out (1 T. C. 40, 49) such a distinction will not stand scrutiny. Community property created by marriage is the effect of a contract.[6] It is the result of a consensual act. The same is true where husband and wife agree to leave Oklahoma and establish their domicile in Texas so as to gain the advantages of a community property system. I can see no difference in substance whether the state puts its community property system in effect by one kind of contract or another. One is as much "legal" as another. The agreement to marry or the agreement to move from Oklahoma to Texas is as "consensual" as the act of filing a written election under the Oklahoma statute.

But if a distinction is taken between a "legal" and a "consensual" community, it cannot be consistently maintained for federal income tax purposes. In the first place, even the distinction which the Court seeks to take between this case and *Poe* v. *Seaborn* vanishes when after-acquired property is considered. Let us assume there is property first acquired in Oklahoma after the written election has been filed[7] and in Washington after marriage. How are we justified in saying that *Lucas* v. *Earl* makes the written election but not the marriage an anticipatory arrangement affecting the income from that after-acquired property? Oklahoma is as explicit as Washington in saying

---

[6] Louisiana has recognized that "The community of property, created by marriage is not a partnership; it is the effect of a contract governed by rules prescribed for that purpose in this Code." Civ. Code, Art. 2807. This Court applied the rule of *Poe* v. *Seaborn* to the Louisiana community property system in *Bender* v. *Pfaff, supra,* note 3.

[7] For all we know some of the income involved in this case may have accrued from property acquired after the written election was filed.

that property so acquired by the husband "shall be deemed the community or common property of the husband and the wife and each, subject to the provisions of this Act, shall be vested with an undivided one-half interest therein." Okla. Stats. Ann. 1941, Title 32, § 56. In both cases the husband never was and never could be the sole owner of that property if local law is to be the guide. His "status" under Oklahoma law is as fixed and irrevocable as it is under Washington law. How can it be said that after-acquired property is governed by "status" in one case and by "contract" in the other? If such a distinction is drawn, we are indeed making income tax liability turn on "elusive and subtle casuistries." Cf. *Helvering* v. *Hallock,* 309 U. S. 106, 118. In the second place, the Tax Court pointed out in this case that the difference "between a community property law which is operative only when expressly invoked and one which operates unless expressly revoked" (1 T. C. p. 46) has no practical basis. There may be a "consensual" community within a so-called "legal" community. In some of the so-called "legal" community property states separate property of one spouse may be converted by contract or deed into community property or *vice versa. Volz* v. *Zang,* 113 Wash. 378, 194 P. 409; *State ex rel. Van Moss* v. *Sailors,* 180 Wash. 269, 39 P. 2d 397; *Kenney* v. *Kenney,* 220 Calif. 134, 136, 30 P. 2d 398. But see *Kellett* v. *Kellett,* 23 Tex. Civ. App. 571, 56 S. W. 766; *McDonald* v. *Lambert,* 43 N. M. 27, 85 P. 2d 78. And it has been supposed since *Poe* v. *Seaborn* that income from that type of community property was not thereafter to be treated as the separate property of the spouse who originally owned it. See 3 Mertens, The Law of Federal Income Taxation (1942) § 19.29. That has been the consistent view [8] both

---

[8] Likewise if in the traditional community property States community property is transmuted by agreement of the spouses into the separate property of one spouse, the income thereafter is taxable

of the courts (*Black* v. *Commissioner,* 114 F. 2d 355) and of the Tax Court. Shoenhair *v.* Commissioner, 45 B. T. A. 576, 579; Harmon *v.* Commissioner, 1 T. C. 40, 46–47. And that has been the Treasury position. G. C. M. 19248, Int. Rev. Bull., Cum. Bull. 1937–2, p. 59. If *Poe* v. *Seaborn* states the correct rule, that view seems irrefutable. Community property is no less created "by law" whether it was created by the contract of marriage or by a post-nuptial agreement.

But are we now to understand that post-nuptial agreements in all community property states are ineffective for federal income tax purposes because they are "consensual" ? Or is the Court willing to give income tax effect to such contracts only within the established community property states? If it is the former then we are overriding settled administrative construction on which great reliance was placed in *Poe* v. *Seaborn,* 282 U. S. p. 116. If it is the latter, then we can hardly say that the difference between the Oklahoma system and the Washington system is that Washington has created its system "as an incident of matrimony" while Oklahoma has not. In that event we make unmistakably plain the discrimination against Oklahoma—we give income tax effect to a post-nuptial agreement between spouses in eight states and deny effect to a similar agreement in Oklahoma. The only apparent basis for such discrimination is that the community property systems in the eight states are traditional; that those eight states have a well-settled policy; that Oklahoma merely gives its citizens a choice to get under or stay out of its community property system. Yet how can we say that the state which allows husband and wife to revoke or alter its community property system by

---

solely to the latter. The Tax Court has so held. Brooks *v.* Commissioner, 43 B. T. A. 860; Shoenhair *v.* Commissioner, 45 B. T. A. 576. And the courts have sustained that position. *Sparkman* v. *Commissioner,* 112 F. 2d 774; *Helvering* v. *Hickman,* 70 F. 2d 985.

contract has a more "settled" policy towards community property than a state which gives husband and wife the choice to invoke its community property system or to keep their marital property on a common law basis? The truth is that there is a wide range of choice in each. But the fact that there is a choice should not be deemed fatal when Oklahoma's case comes before the Court and irrelevant when Washington's case is here.

The distinctive feature of the community property system is that the products of the industry of either spouse are attributed to both; the husband is never the sole "owner" of his earnings; his wife acquires a half interest in them from their very inception. 1 de Funiak, Principles of Community Property (1943) § 239. That was the test which *Poe* v. *Seaborn* adopted. If Oklahoma meets that test, then she should be treated on a parity with her sister states. The fact that her system is newborn [9] does not make it any the less genuine.

I do not mean to defend *Poe* v. *Seaborn*. I only say that if we are to stand by it, we should not allow it to become a "vested" interest of only a few of the states. The truth of the matter is that *Lucas* v. *Earl* and *Helvering* v. *Clifford* on the one hand and *Poe* v. *Seaborn* on the other state competing theories of income tax liability. Or to put it another way, *Poe* v. *Seaborn* has been carved out as an exception to the general rules of liability for income taxes. If we are to create such exceptions we should do so uniformly. We should not allow the rationale of *Poe* v. *Seaborn* to be good for one group of states and for one group only. If we are to abandon the

---

[9] Even the argument based on tradition must be taken with a grain of salt unless history is to be no guide. Apparently some of the states were merely one jump ahead of the decisions of this Court in providing the wife with a "vested" interest in the community. The story is briefly related in Cahn, Federal Taxation and Private Law, 44 Col. L. Rev. 669, 674–677.

rationale of *Poe* v. *Seaborn,* we should do so openly and avowedly. If the practical consequences of applying the rationale of *Poe* v. *Seaborn* to other situations would be disastrous to federal finance, it is time to reexamine the case. The rule which it fashions is the rule of this Court. We have the responsibility for its creation. If we adhere to it, we should apply it without discrimination. If we are not to apply it equally to all states, we should be rid of it. This is the time to face the issue squarely.