## ROMPEL v. UNITED STATES.
### Civil Action No. 621.

District Court, W. D. Texas, San Antonio Division.

March 2, 1945.

R. N. Gresham, of San Antonio, Tex., Palmer Hutcheson, of Houston, Tex., J. P. Jackson, of Dallas, Tex., and Harry C. Weeks, of Fort Worth, Tex., for plaintiff.

Samuel O. Clarke, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Helen R. Carloss, and James P. Garland, Sp. Assts. to Atty. Gen., and W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex., for defendant.

HANNAY, District Judge.

This suit was brought under the Tucker Act, Title 28 U.S.C.A. §§ 761-765, to recover an estate tax assessed against and collected under protest from the plaintiff with respect to the estate of Ernest Herbst, a Texas citizen, who died November 17, 1943. This tax resulted from the defendant's inclusion in the decedent's gross estate of all of the community property which belonged to the decedent and his wife, and which had been accumulated by them in Texas, at the date of decedent's death, rather than one-half thereof. This, the parties admit, is required by the provisions of Section 402(b) of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Code, § 811 (2). Plaintiff timely filed claim for refund, which was rejected, and relies for recovery upon his properly pleaded contention that this Section violates various provisions of the Constitution of the United States. The defendant asserts the Section is valid. If the Section is unconstitutional, the plaintiff is entitled to recover all of the tax paid, for the decedent's separate estate plus one-half of the community estate (less deductions not in controversy) amounts to less than the statutory exemption of Sixty Thousand Dollars ($60,000.) prescribed by the 1942 Act, Section 935(c), I.R.C. as amended, 26 U.S.C.A. Int.Rev. Code, § 935(c). If the Section is not un-

constitutional and void, plaintiff admits that he is entitled to recover nothing.

No evidence having been introduced, the Court finds as the facts the allegations of fact contained in the complaint, to the extent they were admitted by defendant's answer, and the additional facts contained in the written stipulation filed herein by the parties. These are incorporated here by reference.

The Court concludes:

1. Section 402(b) of the Revenue Act of 1942 is unconstitutional and void, being in conflict with the requirements as to due process contained in the Fifth Amendment to the Constitution of the United States, as well as with the requirement of uniformity for an excise tax contained in Article 1, Section 8, Clause 1, of the said Constitution.

2. Plaintiff is entitled to recover from defendant the aforesaid sum of Six Thousand Nine Hundred Thirty-Seven and 76/100 Dollars ($6,937.76) heretofore collected from plaintiff, with interest from the date of judgment, as provided by law.

The constitutional questions presented by plaintiff must be decided, for there is no way to construe Section 402(b) of the Revenue Act of 1942 so as to avoid necessity for such a decision. The responsibility thus imposed upon the Court is fully appreciated, and were it possible to decide the rights of the parties by a construction which would avoid the constitutional problems the Court would do so.

The factual situation presented by this record is a typical one—one which, with minor and unimportant variations, exists as to many husbands and wives in Texas. Herbst and wife had no property at the time of their marriage in 1901. Until 1937 neither acquired any property by gift, devise or descent. Neither ever received compensation for personal services rendered to anyone. He, a stock farmer, and his farmer wife, living together on a small ranch acquired after marriage largely on credit, gradually acquired a comparatively substantial estate which, as a matter of common knowledge, was attributable to the joint work of both the decedent and his wife. The separate property acquired by the decedent in 1937 and which was on hand intact at his death, did not contribute materially to the accumulations, and need not enter into the consideration of the problem involved.

Before passing on the constitutional questions raised, it is necessary to examine the rights and title of the decedent and his surviving wife in the community property owned by them at the time of his death.

■ The community law of Texas stems from the civil law, and it has been the law of Texas as far back as any historical record exists. It was the law of the Spanish Empire when Texas was a part thereof. It was the law of the Republic of Mexico when Texas was part of Mexico. It was the law of the Republic of Texas when Texas was a Republic. And it was the law of Texas when Texas was admitted to the Union in 1845. Prior to, and as a condition of Texas becoming a part of the Union, Congress by joint resolution provided that Texas was to adopt a Constitution acceptable to the Congress, and pursuant thereto the Constitution of 1845 was adopted, preserving therein the community property system as then recognized in Texas. It has remained the fundamental law of Texas, without the change of a single word in the Texas Constitution, from that date. It is important to note that this occurred many, many years before any Federal Estate Tax legislation was ever had. Thus Texas community property law is embedded in and forms a part of the State policy of Texas. Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249. And this State law establishes a rule of property which the Federal Court is bound to follow. Warburton v. White, 176 U.S. 484, 496, 20 S.Ct. 404, 44 L.Ed. 555; Tyler v. United States, 281 U.S. 497, 501, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. It is neither a contractual nor consensual system, but an ancient body of law forming an important and integral part of the fundamental law of Texas, and results, not from voluntary agreements of the parties, but by operation of law, as a vital incident of the marriage relation. Compare Commissioner of Internal Revenue v. Harmon, 323 U.S. 44, 65 S.Ct. 103.

■ Under this community system, the wife is an equal owner with her husband in all of the community property. Their rights, title and interest are co-equal and of equal dignity. The wife does not take her title through or under the husband. Her interest is an absolute, vested property right. The husband never owned any interest in her portion of the property, inasmuch as she acquired it by onerous title

at the very moment of its acquisition and continued uninterruptedly to hold such title as long as the property remained an asset of the community. The husband owns no interest in the wife's portion of the property which terminates with his death. He cannot, and in the instant case he did not undertake to, dispose of her interest by will. On his death, his one-half interest in the property passed to his legatees and devisees. The wife simply retained an equal interest in the property which she owned as co-owner prior to her husband's death.

■ The wife enjoys full power of testamentary disposition of her one-half interest in the property, having the unqualified right to will it to whom she chooses. At her death without a will her interest passes to her heirs at law.

■ The relationship of the spouses in Texas during their lifetime is substantially that of partners in a commercial partnership, and the husband and wife are in all respects equal partners, the husband being the managing partner and vested with management powers. The husband, as managing partner, stands in a fiduciary relation to his wife, and must act in good faith in the handling of her interest in the property, and should he defraud or attempt to defraud his wife's interest, she may have redress against him or against her property in the hands of a third party. He must account to her strictly if his power of management is used to impair her community interest. Bad faith is not the criterion. He is the trustee, and is accountable as such. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799.

■ In the case of divorce she has the right to her one-half, and if no property settlement is made on divorce the parties each continue to hold one-half thereof as tenants in common.

■ Should her husband, the managing partner, become insane, imprisoned or otherwise incapacitated, or should he abandon her, she may succeed to the management of the community estate. At his death she, as surviving partner, is charged with winding up the affairs of the connubial partnership.

■ The wife is liable for income taxes on the property which represents her one-half interest of the partnership income. At her death her legatees and heirs are liable for Texas inheritance taxes on her one-half of the community property, just as the husband is on his half only. Jones v. State, Tex.Com.App., 5 S.W.2d 973. At her death, her estate must pay federal estate taxes upon her one-half interest, even under the terms of the Act in question, just as she and her husband have been paying on their respective half interests only, with full approval prior to the 1942 Act. T.D. 2450 and 3670.

It is clear from the foregoing summary that in Texas the wife is a full equal co-owner with her husband of the community partnership assets. The Supreme Court of Texas has repeatedly so held. Wright v. Hays' Adm'r, 10 Tex. 130, 60 Am.Dec. 200; Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139; Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Wheat v. Owens, 15 Tex. 241, 242, 65 Am.Dec. 164; Wood v. Wheeler, 7 Tex. 13; Arnold v. Leonard, supra; Jones v. State, supra; Blackmon v. Hansen, 140 Tex. 536, 169 S.W.2d 962. The Supreme Court of the United States has likewise repeatedly recognized that the rights of the two spouses are equal, under community property law. Warburton v. White, 176 U.S. 484, 20 S.Ct. 404, 44 L.Ed. 555; Arnett v. Reade, 220 U.S. 311, 31 S.Ct. 425, 55 L.Ed. 477, 36 L.R.A.,N.S., 1040; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249. As the Supreme Court stated in Hopkins v. Bacon, supra, at pages 125 and 126 of 282 U.S. at page 63 of 51 S.Ct., 75 L.Ed. 249, involving community income of spouses domiciled in Texas, the wife "has a proprietary vested interest in the community property such as makes her an owner of one-half of the community income. * * * The interest of a wife in community property in Texas is properly characterized as a present vested interest, equal and equivalent to that of her husband."

When Section 402(b) (2) of the Revenue Act of 1942 is examined against the background of the foregoing summary of the Texas law, it becomes apparent that the statute in controversy violates the due process clause of the Fifth Amendment. That Section provides that all community property (the survivor's half as well as the decedent's half) shall be included in the decedent's estate, with two exceptions:

(a) Community property derived originally from compensation for personal services of the surviving spouse; and

(b) Community property derived originally from separate property of the survivor.

Community property acquired during marriage may be derived from a variety of sources not within either of the above exceptions. For example, property acquired with borrowed money, as in this case; property acquired with commingled funds; property acquired from gainful occupations, where neither spouse received compensation for personal services actually rendered, and where one of the spouses is engaged in his or her own independent business, or where both are so engaged, such as farming, merchandising, ranching, manufacturing, or any other independent business; property acquired from earnings of minor children; property acquired as damages for tort; property acquired through speculation; property acquired by adverse possession; property acquired from other sources than salaries or wages.

It is stipulated in this case that the ranch, which was the principal source of the community accumulation, was acquired largely on credit. It is further stipulated that neither party derived compensation for personal services. It is likewise clear from the stipulation and agreed facts that except to a negligible extent, none of the community resulted from the separate property of either spouse. It follows, therefore, from the agreed facts that the community property in question would not fall within either exception of the statute, and it is therefore that type of community property that is taxed under the statute to the full extent as a part of the estate of the spouse who died first.

This statute clearly violates due process, first, because it taxes this decedent's estate with his wife's property. The Supreme Court has repeatedly held that a tax on A measured by B's property is void because violative of due process. Hoeper v. Tax Commission of Wisconsin, 284 U. S. 206, 52 S.Ct. 120, 76 L.Ed. 248, 78 A.L.R. 346; Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; Frew v. Bowers, 2 Cir., 12 F.2d 625; Hartman v. Greenhow, 102 U.S. 672, 26 L. Ed. 271; Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562; Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224. See also Succession of

Weiner, 203 La. 649, 14 So.2d 475, 482, where it is said:

"And yet, we are asked to place an interpretation on Act No. 119 of 1932 and Section 402(b) (2) of the Revenue Act of 1942 [26 U.S.C.A. Int.Rev.Code, § 811(e) (2)] that would result in the inclusion in the estate of the managing partner of an interest in the community partnership to which he never had any claim and which was, in fact, during his lifetime and is now, owned by his wife."

Again, this statute is more arbitrary and capricious in other respects. It not only taxes or attempts to tax the decedent for property which he did not own, but it also taxes property which he never owned and which he could not and did not transfer at his death. And the surviving wife is again taxed on her half of the property when she dies, with the result that the identical property is taxed to each of the two spouses, once to the spouse who owned, and once to the spouse who did not. This is double taxation. Moreover, each is reciprocally taxed on the other's property. Such, results in not only "taxation but spoilation". Had Mrs. Herbst predeceased her husband, the statute would have required the inclusion of all of the community property here involved in her estate. The sheer accident of his prior death, and not any title or interest of Mr. Herbst in his wife's portion of the community property, has resulted in the present effort to tax the same as a part of his estate. However, had the wife predeceased the husband, she would have been deemed the owner and been taxed on the full amount thereof. Such a statute is clearly arbitrary and capricious and confiscatory and violates due process.

Moreover, the statute requires an investigation of all transactions over a long married life in order to determine whether each item of property on hand at the time of death was derived originally from the separate property or the earnings of the survivor.

If the exception of "compensation for personal services" as used in Section 402(b) is to be given its ordinary meaning, that is, receipts for personal services rendered to someone else, or "earned income" (McLarry v. Commissioner of Internal Revenue, 5 Cir., 30 F.2d 789; Graham v. Commissioner of Internal Revenue, 9 Cir., 95 F.2d 174), then, under the facts in this case, there is no problem in tracing

the origin of the community property here involved, for it is stipulated that neither spouse at any time during marriage received salaries, fees or similar compensation; but if, as the Government's counsel suggests, the term is to be broadened to include the gain from any business activity embracing personal efforts, then there would be in this case a problem of tracing which could not be solved. The parties here were married for 40 years. It would be a physical impossibility for the executors in this case, or any case such as this, after the death of the one most familiar with the business transactions, to trace every item of property on hand at death back through every transaction, and back through the various mutations and changes for 40 years, to determine its origin. Never before have spouses found it necessary to maintain detailed records of their respective contributions to their joint estate. And even if records had been kept, they would not have enabled the executors to meet the burden imposed upon them by this law. It is a matter of common knowledge, and this Court judicially knows, that husbands and wives situated as were the decedent and his wife, contribute personal services to the building up of the community estate. Their respective services, no matter how detailed their records may be, are impossible separately to evaluate. Thus the statute imposes burdens of proof impossible of being met.

■ Moreover, under this law, the property in this case is presumed to be owned entirely by the husband merely because he died first. At the same time, had the wife died first, the statute would have presumed the same property to be owned entirely by the wife. The statute thus creates arbitrary and capricious presumptions contrary to law, to fact, and to human and economic experience. There is no reasonable connection between the fact proved and the fact presumed. These arbitrary presumptions and these impossible burdens of proof clearly violate the Fifth Amendment. Mobile J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas. 1912A 463; McFarland v. American Sugar Refining Co., 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899; Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519; Manley v. Georgia, 279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575; Bailey v. Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191;

Heiner v. Donnan, supra; Schlesinger v. Wisconsin, supra.

■ Furthermore, the statute, in the Court's opinion, violates due process in that it ascribes significance to the origin of wealth, and thus in effect taxes decedent at death with respect to transactions occurring many years previously, innocent in nature, and not testamentary in character. The statute looks to the acquisition of the community property, and attempts to make the tax fall, in the language of the Committee Report, on the one to whom the property is "economically attributable". It is therefore a retroactive statute, taxing past transactions unrelated to death, and is therefore more capricious and pernicious than other retroactive statutes condemned by the Supreme Court. Untermeyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645; Nichols v. Coolidge, supra; Coolidge v. Long, supra. See also In Re Pell, 171 N.Y. 48, 63 N.E. 789, 57 L.R.A. 540, 89 Am. St.Rep. 791; In re Clark's Estate, 105 Mont. 401, 74 P.2d 401, 114 A.L.R. 496.

■ Under the foregoing cases, property rights previously vested in another may not be included in the decedent's estate for estate tax purposes, even though the property rights involved had been created by the decedent in the lifetime, donatively and under circumstances where he retained some interest in the property. A fortiori, Congress may not in this case include by a retroactive statute the interest of the wife in community property, where such interest was fully vested many years prior to her husband's death, and where her rights were not donatively created by the husband, but arose by operation of law as an incident of the marriage, many years prior to the first estate tax law, and where the husband never had any beneficial interest therein.

■ It is argued that at the husband's death there is a shift of property interests in that at his death the wife would have the management. Death of the husband did of course terminate his managerial control over the community property. However, his death would not result in an enlargement of the wife's property rights. Her interest in the property, that is, the full beneficial interest, was in her prior to his death, and his death was not the origin of these rights. Cessation of managerial power over the property is not and cannot be made the occasion for the tax.

490

Neither the Committee Reports nor the statute itself in terms or in operative effect, purport to tax the cessation of managerial control. Nor can the mere cessation of managerial control be made the occasion for an estate tax. Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397. It would be as improper to tax the husband at his death on his wife's property merely because managerial power ceases with his death, as it would be to tax a managing partner of a commercial partnership at death on the value of his partner's interest in his firm, or to tax a trustee at death on his beneficiary's property. See Poe v. Seaborn, supra. Moreover, control of community property is divided, to some extent, between the spouses. Arnold v. Leonard, supra.

The Court is of the opinion, therefore, that the statute in question violates the due process law clause of the Fifth Amendment, and that it is therefore unconstitutional and void.

The Court is also of the opinion that the statute violates the requirement of Article 1, Section 8, Clause 1, of the Constitution, providing that all excise taxes be uniform throughout the United States. "Uniformity" here means geographic not intrinsic uniformity. The requirement is that the same plan and the same method be used throughout the United States, and the same subject be taxed throughout the United States at the same rate. Knowlton v. Moore, supra. The rule of liability must be the same in every state. Florida v. Mellon, 273 U.S. 12, 47 S.Ct. 265, 71 L.Ed. 511. The same method and plan is not by virtue of the amendment in question employed everywhere throughout the United States. Nor is the same subject taxed everywhere. The rule of liability varies from state to state.

The estate tax law is an excise on the privilege of passing property at death, with a few immaterial exceptions dealing with inter vivos transfers testamentary in character, which exceptions are themselves all geographically uniform. The estate tax is laid on transfers at death of property owned by the decedent. This is the rule of Sections 810 and 811 Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, §§ 810, 811. Knowlton v. Moore, supra. This is the rule applicable to all states, common law and community property alike. However, in the community property states

an additional rule of liability is established, not recognized in the common law states. The 1942 Amendment, made specifically applicable to community property states alone, adds to a decedent's estate property not owned by decedent and not transferred at death. All property acquired by either spouse during marriage (except by gift, devise or inheritance), that is, all community property, is taxed by this statute to the first spouse to die, unless the executors show each item to have been derived originally from the personal earnings or the separate property of the survivor. It is only in the community property states that this rule is established. It is only in the community property states that property not owned and not transferred is taxed, and property acquired by either spouse during marriage is taxed in its entirety to the first spouse to die upon failure of the impossible burdens of proof hereinabove referred to. It is only in the community property states that significance is given to acquisition of property during marriage, and the questions of ownership at death and transfer at death are ignored. Thus the same rule, the same methods and the same plans are not used everywhere throughout the United States, and the subject of taxation is not the same everywhere. It therefore follows that such Statute is discriminatory against the community property States such as Texas.

It is no answer to say that Congress may tax a subject wherever it may be found, though it be not found everywhere throughout the United States. Edye v. Robertson, 112 U.S. 580, 5 S.Ct. 247, 28 L.Ed. 798 (Head Money Cases). Community property is not a species of property such as tobacco. Community property merely refers to all property, real and personal, acquired by either spouse during marriage, except that acquired by gift, devise or descent. It is no different from other property so acquired in the common law states, except that in certain circumstances the common law states would recognize the spouses as joint owners, and in other circumstances the one in whose name the property was taken would be regarded as the owner or as trustee for the half interest of the other spouse. See Depas v. Mayo, 11 Mo. 314, 49 Am.Dec. 88, and Solicitor's Opinion 121. In the community property states all such property would be regarded as jointly owned, no matter in whose name the property stands.

The acquisition of property acquired during marriage by either spouse is an event occurring in all states. It is this acquisition and not community property as such that is made the subject of tax in the community property states and not in the common law states. The statute does not purport to tax community property as such. Had it done so it would have been a direct tax, void because unapportioned. The tax is laid with respect to acquisition of property during marriage, with the exceptions noted above, but this subject, though occurring in other states, is not selected as the subject of the tax in those states.

A different rule of taxation is thus prescribed with respect to the same persons and the same property merely because of the state in which they lived at the time of death. We have thus an amazing situation. Congress continues to recognize, for estate tax purposes, the law of the common law states. The law of these common law states in turn recognizes (in common law terminology) the laws of Texas. Yet when dealing directly with Texas citizens and the same property, Congress disregards the State property laws, which in the Tyler case, supra, the United States Supreme Court says it is bound to follow.

Had Congress provided that all property acquired by spouses during marriage throughout the United States, except property derived from the salaries or separate property of the survivor, be taxed to the first to die, and had Congress made this rule applicable in all states alike, disregarding state rules of ownership and transfer at death, no quarrel could be raised as to uniformity. But inasmuch as Congress has specifically made these rules applicable to certain states only, it is clear that the statute lacks uniformity.

 The Court is of the opinion, therefore, that the statute violates the uniformity provision, and that for this additional reason it must be held unconstitutional.

Counsel for the Government presses upon the Court United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763, and Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, arguing that joint tenancies and tenancies by the entirety are similar to community property estates. In joint tenancies and tenancies by the entirety, there is unity of title and interest, and by reason of the doctrine of survivorship death enlarges the survivor's property rights. They have been held to be testamentary in character. The tax is laid only upon the demise of the one that contributed the property. They were in those cases voluntary contractual situations entered into for tax avoidance. To all intents and purposes they were gifts in contemplation of death. As said by the Supreme Court of Louisiana in Succession of Wiener, supra:

"Thus it may be seen that the pivotal points upon which the decisions in these two cases turned were that the wife contributed nothing, either in money or property, toward the creation of the joint tenancy or the tenancy by the entirety, and that she was powerless to dispose of any interest in such estate by will or through legal heirship."

The opinion of the Trial Court in the case of Dimock v. Corwin, reported in D. C., 19 F.Supp. 56, 62 (which was one of the two cases disposed of by the Supreme Court's opinion in the case of United States v. Jacobs, supra) states:

"The joint estate was created in 1916 as has been said, a few months prior to the adoption of the estate tax. The chances are that the purpose of Mr. and Mrs. Folger was not entirely unrelated to the possible enactment of such legislation."

This was said in support of the ruling that the whole of the joint tenancy, created before the Estate Tax was enacted, was to be included in the gross estate of the decedent instead of merely a one-half interest which might have been partitioned, severed, or sold by the decedent during his lifetime had he seen fit to defeat the wife's right to take under the doctrine of survivorship. In this connection, the Court further said:

"Had there been a severance in this case, it may be assumed that a tenancy in common would have been brought about, and the present issue would not have arisen."

The Circuit Court of Appeals, in affirming the judgment of the Trial Court (2 Cir., 99 F.2d 799, 802), said:

"Congress has placed this tax on all joint estates because they accomplish the result of transferring the decedent's property to the surviving spouse. But Congress has excluded any portion of the property which does not represent such a transfer. * * * Congress has provided

492

that all such transactions be included without causing an inquiry in each case, whether the particular gift was designedly made to evade the tax."

There was no opinion by the Trial Court in the companion case determined by the Supreme Court in United States v. Jacobs, supra, but the opinion of the Circuit Court of Appeals is reported in 7 Cir., 97 F.2d 784 (Jacobs v. United States). That Court affirmed the judgment of the Trial Court, holding that only one-half of a joint tenancy created prior to the enactment of the Federal Estate Tax was to be included in the gross estate of the decedent. The Circuit Court rested its opinion upon the distinctions between a joint tenancy and a tenancy by the entirety, pointing out that a joint tenant has a right to sell his interest and may sue for partition. The Circuit Court cited the case of Knox v. McElligott, 258 U.S. 546, 42 S.Ct. 396, 66 L. Ed. 760, and quoted from that opinion as follows [97 F.2d 786]:

"From the structure of the act to say that the measure of the tax is the extent of the interest of both joint tenants is, in effect, to say that a tax will be laid on the interest of Cornelia in respect of which Jonas had in his lifetime no longer either title or control."

It is true that the opinion of the Circuit Court just referred to was reversed by the Supreme Court in United States v. Jacobs, supra. However, the Supreme Court found that the distinctions between a joint tenancy and a tenancy by the entirety were not sufficient to prevent the inclusion of the whole estate, saying [306 U.S. 363, 59 S.Ct. 555]:

"The constitutionality of an exercise of the taxing power of Congress is not to be determined by such shadowy and intricate distinctions of common law property concepts and ancient fictions. * * *

"In addition, there is sufficient substantial similarity between joint tenancies and tenancies by the entirety to have moved Congress to treat them alike for the purposes of taxation. * * * Only a fiction stands between the two. Survivorship is the predominant and distinguishing feature of each. * * *

"While it is true that until the death of decedent here each joint tenant possessed the right to sever the joint tenancy, each was nevertheless subjected to the hazard of losing the complete estate to the other as survivor. Prior to decedent's death, his

wife had no right to dispose of her interest by will, nor could it pass to her legal heirs. She might survive and thereby obtain a complete fee to the property with attendant rights of possession and disposition by will or otherwise. Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the application of the estate tax of which she complains."

The fundamental basis of the decision in the case of Tyler v. United States, supra [281 U.S. 497, 50 S.Ct. 359], is thus stated in the opinion of the Court:

" * * * To include in the gross estate, for the purpose of measuring the tax, the value of property, no part of which originally belonged to one spouse, but which came to the tenancy, mediately or immediately, as a pure gift from the other, and which, as a consequence of the latter's death, was relieved from restrictions imposed by the law in respect to tenancy by the entirety so as to produce in the survivor the right of sole proprietorship, is obviously neither arbitrary nor capricious. The evident and legitimate aim of Congress was to prevent an avoidance, in whole or in part, of the estate tax by this method of disposition during the lifetime of the spouse who owned the property, or whose separate funds had been used to procure it; and the provision under review is an adjunct of the general scheme of taxation of which it is a part, entirely appropriate as a means to that end. Taft v. Bowers, 278 U.S. 470, 482, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362."

The Statutes involved in those cases did not purport to require the inclusion in the gross estate of whichever spouse died first, as does the Statute here involved, but merely made this requirement as to the estate of the donor of the property involved just as is done in the case of ordinary gifts made in contemplation of death.

█ Such situations are not analogous to the case of the community property as known to the State of Texas. Community property cannot be partitioned during the marriage, and the wife or husband could not sever the joint estate and thus escape the application of the Estate Tax, except by severing the marital relation. McDonald v. Stevenson, Tex.Civ.App., 245 S.W. 777; Kellett v. Trice, 95 Tex. 160, 66 S.W. 51. On the other hand, either spouse can dispose of his or her respective interest by will and in the absence thereof each

spouse's share passes to the descendants, if any, instead of to the survivor. There is no right of either spouse to take the other's half under the doctrine of survivorship, but only by will, or by inheritance if there are no descendants. Moreover, the community interests of the spouses vest upon acquisition as in the case of tenants in common, and do not arise from the gift or voluntary action of either spouse, while the converse was true of the joint estates involved in the Jacobs and Tyler cases. The community relationship constitutes a partnership in which the husband is primarily the managing partner, although not always because the wife has management of a portion of the community property; and management may by legislative action be taken away or conferred upon the other spouse without running contrary to the constitutional community property rights guaranteed by the State Constitution and its laws, and entitled to protection under the Federal Constitution.

In view of the foregoing, the Court deems it unnecessary to pass on the remaining questions raised by the plaintiff, to-wit, that the statute in question is a direct tax void because unapportioned and also that it invades the powers reserved to the states, in violation of the Tenth Amendment.

Judgment is accordingly rendered on this 2nd day of March, 1945, that plaintiff recover of defendant the sum of Six Thousand Nine Hundred Thirty-Seven and 76/100 Dollars ($6,937.76), together with interest thereon from date of this judgment at the rate of 4% per annum.