**HEBERT v. UNITED STATES.**

**No. 942.**

District Court, E. D. Louisiana, New Orleans Division.

Sept. 27, 1946.

Lemle, Moreno & Lemle and Arthur A. Moreno, all of New Orleans, La., for plaintiff.

Herbert W. Christenberry, U. S. Atty., and Robt. Weinstein, Asst. U. S. Atty., both of New Orleans, and Robt. R. Reynolds, Jr., of Washington, D. C., for the United States.

CAILLOUET, District Judge.

In this action, the plaintiff seeks to have refunded to her, the sum of $9,474.70 with interest at 6% per annum on $9,468.26 thereof from December 21, 1943, and on $6.44 from July 20, 1943, until paid, because, as she alleges, said sum of $9,474.70 represents the aggregate amount of illegally assessed deficiency income taxes for the years 1937, 1938, 1939 and 1940, respectively, together with interest accrued thereon, which she paid under protest when such deficiency taxes were assessed to her by the Commissioner of Internal Revenue, and demand for the payment thereof was made upon her by the Collector of Internal Revenue at New Orleans.

The parties submitted the issues for judicial determination upon their written stipulation, and the testimony of both plaintiff and her husband subsequently taken by depositions, as provided for by said stipulation, and considering the pleadings, the stipulation, and the depositions, it is found that:—

(1) Mrs. Alice May Harang, wife of Dr. Joseph S. Hebert, resides in the City of New Orleans, State of Louisiana, with her said husband.

(2) They intermarried on the 8th day of August, 1905, without any prenuptial agree-

ment and the community of acquets and gains has existed between them ever since.

(3) Plaintiff inherited from her deceased father, Dominique Harang, long before November 1, 1935, an undivided ⅛ right, title, share and interest in and to a certain tract of land in the Parish of Lafourche, Louisiana, and on said November 1, 1935, joined with all other co-owners of said real property, including her mother, surviving widow in community of plaintiff's deceased father and legal usufructuary of plaintiff's inherited share of his estate, in granting an oil and gas lease upon and against said tract of land so owned in common.

(4) She so joined with her co-owners in the granting of said oil and gas lease only after consulting with no other person than her husband, who advised her to sign, as she did.

(5) Immediately succeeding plaintiff's inheritance from her deceased father, which occurred in or about 1923, all of her heritable share and interest was by her entrusted to the full charge and control of her husband, and she never made public her decision with reference to any of her separate property, if ever occasion demanded action relative thereto by her, in proper person, unless and until she had first discussed the subject with her husband, sought and obtained his counsel and advice, and he directed the course that she, then and there, followed unquestioningly.

(6) In addition to her aforementioned undivided ⅛ interest in and to the Harang tract of land, plaintiff also inherited stocks and bonds, all of which, when delivered to her, were thereupon entrusted by her to her husband's custody and control, as their jointly-owned possessions, and he collected bonds, dividends, and interest, depositing the proceeds, and the oil royalties hereafter mentioned, indiscriminately in his own bank account, from which he allocated to her monthly house expense money, paid bills of the community, and, whenever a surplus of funds accrued in said account, reinvested the same, usually in United States War Savings Bonds in the names of both husband and wife, but always as he chose to do in his own good judgment, although he, naturally, advised his wife on each occasion how he decided to act; which said oil royalties, plaintiff began to receive in 1937, as the result of successful oil drilling operations carried on under the aforementioned November 1, 1935, oil and gas lease, plaintiff endorsing each royalty check coming to her, then handing it over to her husband, and he depositing it in his bank account aforesaid.

(7) Neither before nor after her marriage did plaintiff have any business training, nor business experience any greater than that reflected by the foregoing recital, and neither did she ever have checking or savings account of her own in any bank.

(8) On April 6, 1937, plaintiff received, by donation from her mother, another undivided ⅛ interest in and to the Harang tract of land, together with the right to all minerals thereto appertaining.

(9) Plaintiff did timely file her income tax returns for the years 1937, 1938, 1939 and 1940, respectively, with the Collector of Revenue at New Orleans, Louisiana, and duly paid all taxes shown to be due by said returns.

(10) Following an audit of said returns, however, the Commissioner of Internal Revenue asserted a deficiency of $1,226.60 in income taxes paid for the year 1937; of $4,587.83, for the year 1938; of $1,020.42, for the year 1939; and, finally, of $998.10, for the year 1940.

(11) After protesting the assessed deficiencies, without avail, plaintiff then paid the taxes claimed, together with interest accrued thereon, or the aggregate sum of $9,474.70, in two installments.

(12) Thereupon, plaintiff promptly filed claims for refund covering the four assessed tax deficiencies, but the Commissioner of Internal Revenue denied the same.

(13) The assessed tax deficiencies were and are predicated upon the Commissioner's contention that plaintiff received during the four mentioned taxable years certain oil royalties, related to her separate property, i.e. the aggregate undivided ¼ interest in and to the Harang tract of land, covered by the aforementioned oil and gas

lease of November 1, 1935, and that whereas this income from said separate property was returned as community income, the same was, legally, properly returnable only as her separate income, making it necessary to so assess and collect the aforementioned four deficiency taxes, with interest.

The argument presented by counsel for the Government, in their brief supporting the Commissioner's contention, is based upon the false impression that the contract of lease, whereunder plaintiff received her oil royalties, was entered into before she became the owner of any interest in and to the Harang property;—that her acquisitions from her father, as well as from her mother, occurred after November 1, 1935. Counsel, of course, were plainly in error, therefore, when they wrote that since "the arrangements for the lease of the oil producing property and the disposition of the oil taken therefrom had been entered into prior to the time the taxpayer received her interest in the property, there was nothing by way of administrative action required on the part of taxpayer or husband." In connection with such erroneous statement, there is cited Lazard v. Commissioner of Internal Revenue, decided on February 8, 1946, with rehearing denied on April 15, 1946, by the Circuit Court of Appeals of this Fifth Circuit (153 F.2d 348, 349). In that case, the United States Tax Court's decree supporting the Commissioner's contention, there made, to the effect that the oil royalties received by the plaintiff, Mrs. Rosemary Herold Lazard, were actually her separate income which she had improperly attributed to the community, in her income tax returns for the two tax years of 1940 and 1941 under review, was affirmed by the appellate Court.

But the situation in said Lazard Case was vastly different than that reflected by the present record, and the citation is, therefore, considered inappropriate.

Mrs. Lazard's father, for instance, as owner of an undivided ⅕ interest in and to the oil, gas and mineral rights relating to an 80-acre tract of land, having joined with his co-owners of such mineral rights in leasing the same for development, oil was produced in paying quantities, in 1938, and in that year, too, the taxpayer's father donated to her his aforementioned undivided ⅕ interest, subject to the mineral lease aforesaid.

All of the oil royalties that then accrued to Mrs. Lazard were regularly paid her by checks which she endorsed and then turned over to her husband for deposit in his bank account "and the proceeds thereof (so reads the appellate Court's opinion by Judge McCord) were commingled with his earnings and used indifferently for family expenses and other expenditures or 'debts incurred by husband and/or wife.' The taxpayer for the years 1940 and 1941 owned no other separate property than the oil property here adverted to."

Then, immediately, the opinion continues, as follows:

"Under Louisiana law, if the separate property of the wife is administered and enjoyed by the husband, gains and profits from it become community property. Civil Code Louisiana, Arts. 2386, 2402.

"Under Louisiana law, if the wife's paraphernal property is not administered by her separately and alone, it is considered to be under the management of the husband. Civil Code of Louisiana, Arts. 2385, 2387.

"What is meant by leaving the administration of the wife's property to the husband is the exercise of a voluntary election by which the wife abandons her own rights of authority and control and suffers the husband to manage, not as her agent and subject to her authority, but as if the property were his own. Miller v. Handy, 33 La.Ann. 160, 164; Risher v. Risher, 179 La. 1, 153 So. 1; Guss v. Mathews, 179 La. 1033, 155 So. 765.

"The property here in question was given to the wife by her father, and when the title was vested in her the property had already been leased and oil had been produced on the property. Each month the taxpayer received a check for her oil royalties. The husband had absolutely nothing to do with the management, control or supervision of the property. He in no

wise and in no way, so far as the stipulation shows, exercised administration over it.

"The question as to whether the husband managed the property as if it were his own is one of fact and the Tax Court's decision should not be disturbed if supported by substantial evidence. Lucas v. Commissioner, 5 Cir., 134 F.2d 319; Commissioner v. Hyman, 5 Cir., 135 F.2d 49; Howard v. United States, 5 Cir., 125 F.2d 986; Mc-Faddin v. Commissioner, 5 Cir., 148 F.2d 570.

"We held in the Howard case that (125 F.2d 991). 'The facts stipulated by the parties in this case take the place of evidence, and supply the bases for two inferences: (1) that the policies, being acquired during the marriage state, were community property; (2) that the premiums paid thereon were derived from community funds deposited in bank to the checking account of the husband. These inferences merely cast upon the opposite party the duty of producing some evidence to the contrary, and would yield readily to such evidence, but none is offered.' In the instant case we have abundant evidence that the oil royalties coming to the wife were from her separate estate, paid to her, and so far as the stipulation shows, the husband never communicated in any way with the lessee of her property. Manifestly, the Howard and McFaddin cases support our contention here.

"The taxpayer did not discharge the burden which rested upon her of proving that the property was administered by her husband, or by him 'and the wife indifferently.' There is substantial evidence to support the judgment of the Tax Court, and it should not be disturbed. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Choate v. Commissioner, 324 U.S. 1, 65 S. Ct. 469, 89 L.Ed. 653; Commissioner v. Scottish American Investment Co., 323 U. S. 119, 65 S.Ct. 169, 89 L.Ed. 113; John Kelley Co. v. Commissioner, 66 S.Ct. 299."

Counsel for the Government erroneously assuming that the testimony of the plaintiff and her husband (neither of whose depositions had as yet been taken when counsel wrote their brief) would show no more than that, while the husband counseled and advised the wife relative to the administration of her separate property, such administration was exclusively done by the wife, cite the case of Miller v. Handy, 33 La.Ann. 160, decided in 1881, quoting an excerpt therefrom which supports the legal proposition that a wife, owning separate property of which she retains the sole administration, may, however, administer it through her husband, acting as her agent by virtue of a special and express power of attorney. With reference to this, the pertinent part of the Court's decision reads as follows:—"The wife, as we have seen, has the absolute right to administer her paraphernalia 'separately and alone'. She may, at her option, exercise this right, or she may leave the administration to her husband. If she have left the administration to her husband she may withdraw it from him when she chooses. Art. 2387. What is meant by the wife's administration 'separately and alone', is the retention of the administration under her sole, separate and exclusive control and authority, with the view of making the revenues her own. What is meant by leaving the administration to her husband is the exercise of a voluntary election, by which she abandons her own right of authority and control and suffers the husband to manage, not as her agent and subject to her authority, but as if the property were his own. So long as the acts of the spouses make it clear and certain that the wife intends to reserve the administration to herself and for her own benefit, and to permit no acts to be done in reference thereto except by herself either in person or through properly constituted agents, and that the husband does not assume to interfere in the administration except as the express and open agent of the wife, we can see nothing to prevent the administration from being considered as that of the wife 'separately and alone,' in the sense of the law. As, with reference to such administration, the wife has all the powers of a feme sole, we find nothing in the law preventing her from employing agents, and nothing restraining her from

employing her husband as such agent, provided the agency be express, public, and clearly proved. * * *."

Judge Fenner was the organ of the Court in the Miller v. Handy case (supra), and it is interesting to read his comments relative thereto, made five years later, in Trezevant v. Holmes, 1886, 38 La.Ann. 146, viz:

" * * *. It is true we have held that such agency is not incompatible *with the wife's separate administration; but we were careful to emphasize the circumstances which should characterize such administration. Thus we said: '

" 'Mrs. Jackson administered the plantation in her own name, her husband acting as her agent by virtue of procurations which she was always careful to prepare and to deposit with her merchants, who are shown to have recognized her authority as principal in all transactions. The accounts with her successive merchants were always kept in her name; she was credited with all its revenues and charged with all its expenses. Her husband, who conducted other plantations for his own account, kept his own accounts with the same merchants entirely separate from the wife's plantation accounts.' "

And we said:

" 'So long as the acts of the spouses make it clear and certain that the wife intends to reserve the administration to herself and the husband does not assume to interfere in the administration except as the express and open agent of the wife, we can see nothing to prevent the administration as being that of the wife, "separately and alone" in the sense of the law.' Miller v. Handy, 33 La.Ann. 160.

"With regard to the facts of this case, it suffices to say that they are marked by a conspicious absence of every feature above indicated, * * *."

So, too, may it be here observed, but with even greater reason, that counsel's reliance upon Miller v. Handy, 33 La.Ann. 160, is in no wise justified.

Counsel argue that it is made clear by, said Miller v. Handy case and by Lucas v. Commissioner of Internal Revenue, 5 Cir.,

1943, 134 F.2d 319, that "even acts of administration by the husband do not take the management and administration away from the wife unless she has relinquished the control of the property and has permitted the husband to treat the property as though it were his own." But to no purpose can the argument be any longer made, in view of the *presently* established facts of *this* case, developed by the depositions of plaintiff and her husband, respectively.

In the Lucas Case, the plaintiff wife, as here, was seeking refund of deficiency taxes, paid under protest. She and her husband resided in Louisiana and she had reported for taxation, as income of the community existing between herself and husband, certain income received by her from her separate property. The Commissioner had contended successfully before the then United States Board of Tax Appeals that such income should have been reported as belonging to the taxpayer's separate estate.

Said the Circuit Court of Appeals, with Judge McCord as the organ of the Court, viz:

"Under Louisiana law, if the separate property of the wife is administered and enjoyed by the husband, gains and profits from it 'fall into the community'. La.Civ. Code, Arts. 2386, 2402; Succession of Andrus, 131 La. 940, 60 So. 623. If the wife's paraphernal property is not administered by her 'separate and alone', it is considered to be under the management of the husband. La.Civ.Code, Arts. 2385, 2387; Breaux v. LeBlanc, 16 La.Ann. 145; Dart's Louisiana Digest, Marriage, Sec. 101. The controlling question stated by the Board in its decision, and urged here by the petitioner, is whether or not the separate property of Mrs. Lucas 'was under the administration of her husband.?'

"The separate property involved consisted of investments, chiefly located in St. Louis, Missouri, in two family pools of securities, and a trust as to real estate. The taxpayer's husband testified that from time to time he called for money from the agent handling the property in Missouri; that funds received by him from the agent were deposited in a joint bank

account and expended for the community; that Mrs. Lucas did not attempt to manage her separate property; and that the agent in Missouri did nothing respecting the property without consulting him. The testimony of the husband was vague and uncertain in many respects, but giving to it full weight and credence the question as to management and administration of the property should be answered and set at rest by adverting to the power of attorney and contract of agency entered into by the taxpayer, her sister, and two brothers by which instrument they nominated a brother as attorney in fact and agent to 'hold title in his own name', and 'to manage and control the assets so scheduled for our joint interests, and to that end give him power to sell any of said assets, and to invest and reinvest the proceeds as he deems advisable in our joint interest.' Certainly, this instrument, executed by Louise P. Lucas apparently after her marriage, evinces an intention on her part to vest the control, management, and administration of her separate property in someone other than her husband. Under the terms of this instrument the agent was not required to consult the husband of the taxpayer in and about the management of the property; and the husband did not give one specific instance where he had given advice to the agent. Nowhere does the record show that the husband administered this separate property 'as if the property was his own'. Miller v. Handy, 33 La. Ann. 160; Guss v. Mathews, 179 La. 1033, 1043, 155 So. 765; Risher v. Risher, 179 La. 1, 153 So. 1; Dodd v. Succession of Orillion, 14 La.Ann. 68.

"The plain and unambiguous terms of the power of attorney, and the uninterrupted management of the agent acting thereunder, shows that the property was in fact managed by the agent of the wife. This showing clearly, completely, and fully answers the question in this case, and overturns and refutes any presumption that the property was under the administration and management of the husband. See Howard v. United States, 5 Cir., 125 F.2d 986, which discusses statutory presumption; and compare Commissioner v. Skaggs, 5 Cir., 122 F.2d 721, which deals with income from real property.

"The petitioner failed to prove that her property was administered by her husband, and that the income was the property of the community. The Board properly sustained the deficiency determinations of the Commissioner."

But counsel, despite the fact that they frankly admit their contention to be the same that was unsuccessfully urged, in 1943, before the Circuit Court of Appeals of this Fifth Circuit, in the case of Commissioner of Internal Revenue v. Hyman, 5 Cir., 135 F.2d 49, 50, nevertheless argue at length that, since Mrs. Hebert was at liberty, under R.C.C. Art. 2387, to withdraw her separate property from her husband's administration (if it be adjudged that she ever left such administration to him), the income derived from said separate property is taxable in full to her, not falling into the community of acquets and gains and authorizing her return of but the one-half thereof as her taxable income. "This contention,"—so reads the Court's opinion in said Hyman Case, by Judge McCord,—"runs counter to the long settled and generally accepted construction of the income tax laws as applied to community income in Louisiana, and is without merit. If the taxpayer-wife does assume administration of her paraphernal property, future income from it will be hers and she will, of course, be taxable in full on it. She has made no such election here. She has left the administration to her husband, and under Louisiana law every cent of income from that property 'fell into the community', vesting equally in the husband and the wife, and should be taxed accordingly— one half to the wife, one half to the husband. Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249."

Government counsel not only question the pertinency of the Court's citation of the Bender v. Pfaff case, but suggest that a consideration of three decisions of the United States Supreme Court handed down

since the Hyman Case, supra, justifies their continued argument to the effect that the oil royalty income derived from Mrs. Hebert's separate property is taxable to her alone.

The three cases, thus referred to by counsel, are: Commissioner of Internal Revenue v. Harmon, 1944, 323 U.S. 44, 65 S.Ct. 103, 89 L.Ed. 60; rehearing denied, 323 U.S. 817, 65 S.Ct. 310, 89 L.Ed. 649; Fernandez, Collector of Internal Revenue v. Wiener, et al., 1945, 326 U.S. 340, 66 S. Ct. 178, 90 L.Ed. ——; rehearing denied, 66 S.Ct. 525; Commissioner of Internal Revenue v. Holmes' Estate, 1946, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. ——.

In the Harmon Case, the Supreme Court considered (as reads the decision) whether, upon a husband and his wife electing to come under the lately enacted optional community property law of the State of Oklahoma, they were thereafter legally justified in dividing between themselves, share and share alike, for income tax purposes, the aggregate of the following income by them received and which the statute denominated community income,— oil royalties and stock dividends, respectively, due each of them, his salary, interest due him, and distribution of profits of a partnership of which he was a member. The spouses had filed separate income tax returns, each reporting one-half of said community income for taxation, but the Commissioner rule that *all* income enuing from the husband's earnings and from his separate property was taxable to him alone, but that he should be taxed as to none derived from his wife's separate property.

The Tax Court and, in due course, the Circuit Court of Appeals for the Tenth Circuit, disapproved, and both relying on Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239, held that, after the spouses' election to avail themselves of the benefit of the law, the wife became vested with one-half of all community income, as in said statute defined.

Said the Supreme Court, in part, as follows [323 U.S. 44, 65 S.Ct. 104]:

"* * * They overruled the petitioner's contention that, as the statute permits voluntary action which effects a transfer of rights of the husband and wife, the case is governed by Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, and other decisions of like import. We hold that the petitioner's view is the right one.

"Under Lucas v. Earl an assignment of income to be earned or to accrue in the future, even though authorized by state law and irrevocable in character, is ineffective to render the income immune from taxation as that of the assignor. On the other hand, in those states which, by inheritance of Spanish law, have always had a legal community property system, which vests in each spouse one half of the community income as it accrues, each is entitled to return one half of the income as the basis of federal income tax. Communities are of two sorts,—consensual and legal. A consensual community arises out of contract. It does not significantly differ in origin or nature from such a status as was in question in Lucas v. Earl, where by contract future income of the spouses was to vest in them as joint tenants. In Poe v. Seaborn, supra, the court was not dealing with a consensual community but one made an incident of marriage by the inveterate policy of the State. In that case the court was faced with these facts: The legal community system of the States in question long antedated the Sixteenth Amendment and the first Revenue Act adopted thereunder. Under that system, as a result of State policy, and without any act on the part of either spouse, one half of the community income vested in each spouse as the income accrued and was, in law, to that extent, the income of the spouse. The Treasury had consistently ruled that the Revenue Act applied to the property systems of those States as it found them and consequently husband and wife were entitled each to return one half the community income. The Congress was fully conversant of these rulings and the practice thereunder, was asked to alter the provisions of later revenue acts to change the incidence of the tax, and refused to do so. In these circumstances, the court declined to apply the doctrine of Lucas v. Earl.

"In Oklahoma, prior to the passage of the community property law, the rules of the common law, as modified by statute, represented the settled policy of the State concerning the relation of husband and wife. A husband's income from earnings was his own; that from his securities was his own. The same was true of the wife's income. Prior to 1939, Oklahoma had no policy with respect to the artificial being known as a community. Nor can we say that, since that year, the State has any new policy, for it has not adopted, as an incident of marriage, any legal community property system. The most that can be said is that the present policy of Oklahoma is to permit spouses, by contract, to alter the status which they would otherwise have under the prevailing property system in the State.

"Such legislative permission cannot alter the true nature of what is done when husband and wife, after marriage, alter certain of the incidents of that relation by mutual contract. Married persons in many noncommunity states might, by agreement, make a similar alteration in their prospective rights to the fruits of each other's labors or investments, as was done in Lucas vs. Earl. This would seem to be possible in every State where husband and wife are permitted freely to contract with each other respecting property thereafter acquired by either."

\*      \*      \*      \*      \*

"\* \* \* The important fact is that the community system of Oklahoma is not a system, dictated by State policy, as an incident of matrimony."

In the Weiner Case decision [328 U.S. 340, 66 S.Ct. 482], whereby the United States Supreme Court held that it is legal for the Commissioner of Internal Revenue, in levying an estate tax on the termination of the Louisiana community of acquets and gains by the death of the husband, to measure such tax by the value of the entire community property, the Court made the following pertinent observations, viz:

"\* \* \* We have had occasion in several earlier cases to make some examination of the laws governing the interests of the spouses in community property states. See e.g., Moffitt v. Kelly, 218 U. S. 400, 31 S.Ct. 79, 54 L.Ed. 1086, 30 L. R.A.,N.S., 1179; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; Commissioner v. Harmon, 323 U.S. 44, 65 S.Ct. 103, 89 L.Ed. 60. Counsel for appellees concede that the opinion in Bender v. Pfaff, supra, so far as it goes, correctly defines the several interests of the spouses in Louisiana community property. To that we now add a more detailed statement so far as it may be relevant to the decision of the present case.

"By the law of Louisiana, every marital status subject to the laws of the state superinduces a partnership or community of the spouses with respect to property in the state acquired during the life of the community, unless there be at the time of the marriage a stipulation to the contrary. All earnings and all property acquired by the husband or wife during the life of the community become community property, with certain limited exceptions not here involved, and which need not be detailed further than to say that the spouses can acquire some separate property during marriage. \* \* \*"

A footnote is appended to the final sentence of the foregoing excerpt. It reads, in part, as follows: "\* \* \* The income from the separate property of the husband, and of such of the wife's separate property as is given over to the husband's management also falls into the community by Article 2402, supra; \* \* \*."

In the Holmes Estate Case [326 U.S. 480, 66 S.Ct. 259], the Supreme Court merely held that although Holmes had created, by a single indenture, three several irrevocable trusts, with no power reserved to revest in himself or his estate any portion of the corpus or income of either, yet, because he had conferred upon himself, as trustee (and he acted as such until his death), broad discretionary power to either pay over income accrued to a particular trust to the designated beneficiary thereof, or to allow such income to accumulate for eventual surrender to said beneficiary upon termination of the trust, or "to apply each beneficiary's share of the corpus for his

maintenance, welfare, comfort or happiness", and since none of the sons had ever had "a present right to immediate enjoyment of either income or principal" of the trust created for him, the Commissioner of Internal Revenue correctly contended that there existed a deficiency in the reported Holmes estate tax, by reason of the failure to include the value of the aforementioned trust estate in the deceased Holmes' gross estate; reversing both the Tax Court that had held to the contrary, and the Circuit Court of Appeals for this Fifth Circuit, that had affirmed its action.

Clearly, therefore, neither counsel's disposition to so question the citation of Bender v. Pfaff, nor counsel's veiled suggestion that the three Supreme Court decisions, just examined, "throw additional light on the question" at issue, detract one whit from the full force and binding effect upon this Court of the Hyman Case, decided by the Circuit Court of Appeals for this Fifth Circuit, in 1943.

Inasmuch as the Government, also, additionally urges the contention that it pressed in the case of Warren J. Harang v. United States of America, D.C., 68 F.Supp. 227, on this day decided by this Court, to the effect that oil royalties do not constitute profits or fruits under Articles 2386 and 2402 of the Louisiana Civil Code, and are, therefore, not properly to be reported as community income, counsel's present brief refers the Court to the argument on said particular point which they have already presented at length in said Harang Case.

The Court has held adversely to counsel's contention, for the reasons fully made to appear in the decision already handed down, and it now likewise holds herein, making reference to such Harang Case decision for greater detail concerning the underlying reasons for adopting an unfavorable view of counsel's position.

Considering the premises, the Court now makes the following formal findings of fact and conclusions of law, viz:

## Findings of Fact.

1. Plaintiff Mrs. Joseph S. Hebert (nee Alice May Harang) duly paid, under protest, the deficiency taxes assessed against her by the Commissioner of Internal Revenue, and payment whereof was thereupon demanded of her by the Collector of Internal Revenue, at New Orleans, Louisiana; with interest at 6% per annum from the respective dates prescribed for the payment of the 1937, 1938, 1939 and 1940 personal income taxes to the date upon which was made the assessment of each such deficiency tax.

2. She timely filed claim for refund to her of the aggregate amount of said deficiency taxes, with interest, so paid.

3. At the time of said payment, in installments, Charles A. Donnelly was Acting Collector of Internal Revenue, at New Orleans, La., but was no longer in office as Collector on October 23, 1944, when plaintiff's present action was commenced.

## Conclusions of Law.

1. Jurisdiction is vested in this Court to adjudicate herein, under Section 24 of the Judicial Code, as amended, Sec. 41 (20), 28 U.S.C.A.

2. The deficiency tax assessments levied against plaintiff Mrs. Joseph S. Hebert (nee Alice May Harang) by the Commissioner of Internal Revenue, with reference to said taxpayer's personal income tax returns for the tax years 1937, 1938, 1939 and 1940, were illegal and so was the collection of the taxes thereunder, with interest.

3. The taxpayer is entitled to the refund of the whole aggregate amount thus illegally assessed, and collected from her, with interest thereon at the rate of 6% per annum, as provided for by Section 177 of the Judicial Code, as amended, Sec. 284 (b), 28 U.S.C.A.

Let judgment be entered forthwith, in accordance with the foregoing, awarding the plaintiff the principal sum, with interest and costs, as prayed for in her complaint.